Dear District Attorney Harris
¶ 0 This office has received your request for an official Attorney General Opinion asking, in effect, the following question:
Does filing a "John Doe Information" to give a districtattorney authority to issue subpoenas to determine whether acrime has been committed or who possibly committed the crimecomply with the provisions of 22 O.S. Supp. 2000, § 258[22-258]?
¶ 1 Under Oklahoma law as it exists today, notice that a defendant is being charged with a crime is commonly given by the charging document known as the Information. Parker v. State,917 P.2d 980, 985 (Okla.Crim. 1996). Oklahoma statutes also set forth requirements for the sufficiency of an Information at22 O.S. 1991, §§ 401[22-401] — 410. Id. Section 401 requires an Information to contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Id.
¶ 2 Your question has two components: whether a "John Doe Information" may be filed when there is not sufficient evidence to establish probable cause for filing an Information against a particular individual, and whether a "John Doe Information" may be filed when there is not sufficient evidence to determine whether a crime has been committed.
¶ 3 The provision you reference, 22 O.S. Supp. 2000, § 258[22-258],
is over one hundred years old and has been amended several times since its original form. That Section currently provides:
 Second: The district attorney may, on approval of the county judge or the district judge, issue subpoenas in felony cases and call witnesses before him and have them sworn and their testimony reduced to writing and signed by the witnesses at the cost of the county. Such examination must be confined to some felony committed against the statutes of the state and triable in that county, and the evidence so taken shall not be receivable in any civil proceeding.
Id. To fully understand this provision, it is necessary to evaluate it in the context of the history of Oklahoma's statutory criminal procedure and to consider how those procedures have evolved into the system of criminal procedure that exists today.
 The History of Section 258 (Second)
¶ 4 Originally, all public offenses triable in the district courts, with a few exceptions,[1] were to be prosecuted by Indictment handed down by a grand jury. Okla. Stat. ch. 68, art. VI, § 1 (1893). "Indictment" was defined as "an accusation in writing, presented by a grand jury to a competent court, charging a person with a public offense."Id. § 25. According to the statutes in effect at that time, with limited exceptions, no felony action could be commenced prior to the filing of an Indictment by a grand jury. Okla. Stat. ch. 68, art. V, §§ 17-20 (1893).[2]
¶ 5 Under the statutory scheme in effect in 1893, it was possible for a person who allegedly committed a public offense to be taken into custody prior to the filing of an Indictment or a complaint by the attorney for the Territory, the predecessor to today's district attorney. Okla. Stat. ch. 68, art. V, §§ 21, 24 (1893). Magistrates were given the power to issue warrants for the arrest of a person charged with a public offense.[3]
Okla. Stat. ch. 68, art. V, § 22 (1893). A person arrested pursuant to such an arrest warrant was taken before a magistrate for an initial appearance in which the magistrate informed the person of the charge against him, his right to counsel, and his right to a preliminary examination. Okla. Stat. ch. 68, art. V, § 63 (1893). Once counsel was obtained or waived, a preliminary examination of the matter, if not waived, was conducted before the magistrate without delay. The Territory and the accused could present evidence through witnesses regarding the matter under examination and could either provide the magistrate a statement or testify. Okla. Stat. ch. 68, art. V, §§ 65-66, 69-72, 74 (1893). The accused had the right to demand that all testimony given be taken down in the form of depositions which were to be filed with the record in the case; these could be inspected by the judge having jurisdiction to try the matter, the prosecutor, and the attorney for the accused, but were not otherwise public record. Id. §§ 70, 72. At the conclusion of the preliminary examination, the magistrate would either commit the accused to the custody of the sheriff or other appropriate law enforcement officer pending a proper charge being brought, or, if evidence was insufficient, order the accused discharged from custody.Id. §§ 74, 76-80 (1893). A preliminary examination occurred only if the defendant was arrested prior to the return of an Indictment by a grand jury or the filing of a complaint regarding certain misdemeanor offenses not brought in the District Court.
¶ 6 The present provision found at 22 O.S. Supp. 2000, § 258[22-258]
(Second) was originally included within a revision of the Code of Criminal Procedure in 1895. Section 5004 of the Statutes of 1893, which originally contained no provision regarding investigative subpoenas, was amended to read as follows:
 First. The witnesses must be examined in the presence of the defendant, and may be cross-examined by him. On the request of the county attorney, or of the defendant, all the testimony must be reduced to writing in the form of questions and answers and signed by the witnesses, or the same may be taken in shorthand and transcribed without signing, and in both cases filed with the clerk of the district court, by the examining magistrate, and may be used as provided in section 16 of this act. In no case shall the county be liable for the expense in reducing such testimony to writing, unless ordered by the county attorney. Second, The county attorney may, on approval of the probate judge, issue subpoenas in felony cases and call witnesses before him when the grand jury is not in session, and have them sworn and their testimony reduced to writing and signed by the witnesses, at the cost of the county, and when taken shall file the same with the clerk of the district court, to be used as in section 16 of this act provided. Such examination must be confined to some felony committed against the statutes of the Territory and triable in that county, and the evidence so taken shall not be receivable in any civil proceeding. A refusal to obey such subpoena or to be sworn or testify may be punished as a contempt on complaint and showing to the probate court that proper cause exists therefor. If the county attorney call or examine any witnesses in violation of the provisions of this paragraph he shall be guilty of a felony, and the costs of taking such testimony shall be taxed to him and deducted from his salary before it is paid to him.
1895 Okla. Sess. Laws ch. 41, art. I, § 1 (amending Okla. Stat. ch. 68, art. V, § 70 (1893)) (emphasis added). Section 16 referenced above amended Sections 5049 of the statutes of 1893 to read as follows:
 In the investigation of a charge for the purpose of presenting an indictment or accusation, the grand jury may receive the written testimony of the witnesses taken in a preliminary examination of the same charge, and also the sworn testimony prepared by the county attorney, without bringing those witnesses before them, and may hear evidence given by witnesses produced and sworn before them, and may also receive legal documentary evidence.
1895 Okla. Sess. Laws ch. 41, art. I, § 16 (amending Okla. Stat. ch. 68, art. VI, § 27 (1893)) (emphasis added). This statute is still in substantial effect today at 22 O.S. 1991, § 333[22-333],
allowing a grand jury to consider sworn testimony prepared by the district attorney without bringing those witnesses before them.Id. Taken in context, it is clear that the Legislature intended that district attorneys have investigative powers for use in grand jury proceedings prior to indictment. It is also clear that the proceedings before the prosecuting attorney were intended to be distinct from the proceedings of the magistrate in a preliminary examination.
¶ 7 In summary, under the statutory scheme in which what is now Section 258 (Second) was originally introduced, crimes were generally tried by grand jury indictment. In investigating the charge, the grand jury could consider sworn testimony presented to the county attorney under what is now Section 333. A preliminary examination only occurred if the defendant was arrested prior to a criminal action commencing upon the finding of an Indictment by the grand jury or the filing of a complaint regarding certain misdemeanor offenses not brought in district court.
 The Emergence Of The Criminal Information As The Charging Document
¶ 8 The Oklahoma Constitution was adopted and ratified in 1907, allowing for criminal prosecutions either by Indictment or Information. Okla. Const. art. II, § 17. In In re McNaught,99 P. 241, 251 (Okla.Crim. 1909), the Oklahoma Court of Criminal Appeals specifically found that "prosecutions for felonies were to be by information, from the organization of the state, except that in special instances such prosecutions might be by indictment." Id. The Legislature, in adopting the Compiled Oklahoma Statutes in 1909, substituted "county judge" for "probate judge" as the judicial officer to approve the issuance of prosecutorial investigative subpoenas in what is now Section 258 (Second). 1909 Compiled Okla. Laws ch. 89, art. IV, § 6623 (Second). In 1910, the statute remained virtually unchanged except that the reference to Section 6676, in Section 6623, was amended to Section 5719 to reflect the appropriate statutory reference for the provisions which governed the presentation of evidence to a grand jury. Okla. Rev. Stat. Ann., ch. 62, art. V, § 5674 (1910).
¶ 9 In 1913 Section 6623 of the 1909 Compiled Laws of Oklahoma, the provision that is now Section 258 (Second), was amended to delete the reference to grand jury proceedings and to delete the provision making it a felony for a county attorney to call or examine witnesses in violation of the section. The amended statutory provision read substantially as it does today:
 Second: The county attorney may, on approval of the county judge or the district judge, issue subpoenas in felony cases and call witnesses before him and have them sworn and their testimony reduced to writing and signed by the witnesses at the cost of the county. Such examination must be confined to some felony committed against the statutes of the state and triable in that county, and the evidence so taken shall not be receivable in any civil proceeding.
1913 Okla. Sess. Laws ch. 68, § 1. The deletion of the reference to grand jury proceedings was an apparent attempt to reconcile this statutory provision with the provision of the Oklahoma Constitution allowing for complaint by Information. The grand jury would no longer be the criminal investigative tool for determining whether charges should be filed. Instead, the prosecutor would perform this function, aided by the ability to issue subpoenas and call witnesses before him and have their testimony sworn and reduced to writing. The Oklahoma Court of Criminal Appeals recognized this power in 1932 in Blake v.State, 14 P.2d 240, 242 (Okla.Crim. 1932), when it stated:
 Generally speaking, under modern conditions, a grand jury is a superfluous piece of legal machinery. Where prosecuting officers are willing to act there is rarely any reason why this cumbersome proceeding should be invoked. They have the power without a grand jury to make inquisition, to examine witnesses, and to ascertain facts upon which to base a prosecution.
Id. (emphasis added). When Blake was decided in 1932, what is now Section 258 (Second) was the only provision in existence authorizing the prosecutor to "make inquisition, to examine witnesses, and to ascertain facts upon which to base a prosecution." Id. Thus, the Court at that time apparently interpreted what is now Section 258 (Second) to be used as an investigative tool prior to the filing of an Information.
¶ 10 It is against that historical background that two important concepts emerge. First, Section 258 was originally intended as a investigative tool. It was first intended for use by the grand jury in determining whether to return an Indictment and was later intended to be used by a district attorney in determining whether to file an Information. Second, the historical background of the statutory provision must be considered in the context of modern-day decisions of the Oklahoma Court of Criminal Appeals interpreting Section 258 (Second).
 Recent Decisions By The Oklahoma Court Of Criminal Appeals
¶ 11 In 1991, the Court interpreted Section 258 (Second) to prohibit issuing subpoenas in cases where no charges had been filed. Isaacs v. Dist. Court, 818 P.2d 1247, 1249 (Okla. Crim. 1991). In so doing, the Court noted that 22 O.S. 1991, §10[22-10] defines "criminal action" as "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment . . ." Id. The Court stated, "[t]his section does not apply where charges have not been filed in district court against a defendant." Id. The Court supported its analysis by a comparison to 22 O.S. 1991, § 1415[22-1415](A), "which specifically provides under the Oklahoma Corrupt Organizations Prevention Act, that the Attorney General or a district attorneyprior to the commencement of any criminal proceeding, on approval of the district judge, may require the production of any business papers or records by subpoena duces tecum" when the person has engaged in conduct constituting a violation of the Oklahoma Corrupt Organizations Prevention Act. Id.
¶ 12 The Court discussed Section 258 (Second) again in 1997 inReupert v. State, 947 P.2d 198 (Okla.Crim. 1997). InReupert, the State had applied for subpoenas to issue to all defense witnesses under Section 258 (Second) during the course of the trial, after the defendant had been bound over. The Court found the State should not have subpoenaed witnesses under this section, which allows subpoenas to be taken without notice to the defendant. Id. at 201. The Court noted this statute discusses requirements for testimony, filing, and the effect of grand juries on preliminary information in felony cases. Id. at 200. The fact that the defendant need not be present or have the opportunity to cross-examine these witnesses indicates that the depositions are intended as discovery tools and cannot be used as preliminary hearing testimony. Id. The court summarized its holding, "[t]aken as a whole Section 258 authorizes the district attorney to conduct examinations and file Informations in conjunction with preliminary hearing proceedings, and does not apply after a defendant is bound over." Id.
 A Reconciliation Of History And Case Law
¶ 13 These cases view Section 258 (Second) in light of modern practice rather than under the historical backdrop presented above, but at the same time recognize the use of Section 258 (Second) as a discovery tool. History and case law can be reconciled by allowing for the filing of "John Doe Informations" in certain circumstances. Such filing would meet the requirements of Isaacs because an Information would be filed and a "felony case" would be commenced. Filing a "John Doe Information" would allow for the use of investigative subpoenas as the section was originally intended and would prevent the concern expressed inIsaacs that investigative subpoenas not be used when there is no case on file.
¶ 14 The question of whether a "John Doe Information" could be filed in a particular situation is a question of fact which cannot be answered by this Opinion. 74 O.S. Supp. 2000, §18b[74-18b](A)(5). It is important to note, however, that your question has two components: whether a "John Doe Information" can be filed to avail a district attorney of Section 258 (Second) to determine who committed a crime; and whether a "John Doe Information" can be used to determine whether a crime has been committed.
¶ 15 As to your second question, Section 258 (Second) provides that the district attorney may issue subpoenas "in felonycases" and also provides that the examination be confined to"some felony committed against the statutes of the state.."Id. (emphasis added). This provision, therefore, only applies if a felony has in fact been committed. Consequently, it cannot be used to determine whether a felony has been committed.
¶ 16 Your first question is a more difficult one. General authority for filing a "John Doe Information" is derived from 22O.S. 1991, § 403[22-403] which allows for prosecution of a defendant by a fictitious or erroneous name. That section states:
 When a defendant is indicted or prosecuted by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it must be inserted in the subsequent proceedings, referring to the fact of his being charged by the name mentioned in the indictment or information.
Id. The scant case law interpreting the statute refers to situations when the defendant's identity is known but his true name is not known. The Oklahoma Court of Criminal Appeals has held that if a defendant's name is unknown, the State may legally proceed against such accused person under the name of "John Doe."Ervin v. State, 279 P. 710, 711 (Okla.Crim. 1929). "When the defendant is arraigned the court should ascertain his true name, and thereafter the proceedings should be carried on in such true name." Id. (citation omitted). See also Winfield v. State,191 P. 609, 610 (Okla.Crim. 1920). (The Court has also recognized that it is not essential to the validity of an Indictment or Information that the name of the defendant be correctly stated. The Court found that when an Information alleged that Henry McClair committed a robbery, evidence disclosing that the defendant's true name was Henry Clair was not fatal to the conviction.)
¶ 17 The situation you reference in your question is not one when the true name of the defendant is unknown, but when there is a question about whether a particular defendant committed the crime. While Ervin does not speak directly to this issue, it addresses the same underlying concerns of whether the purpose of an Information is served by filing a "John Doe Information."Ervin held that a true name is not required to file an Information and that an Information may be amended later to comport with notice and an opportunity for the charged defendant to defend against the charges. Ervin, 279 P. at 711. Therefore, Section 403 allows for the filing of a "John Doe Information" in certain situations. The question of how much information must be known to a district attorney before a "John Doe Information" is filed, is a question of fact depending upon the degree with which a person can be identified and cannot be answered by this Opinion. 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).
¶ 18 It is important to recognize that a district attorney must have sufficient information to obtain the approval of a district judge for the issuance of the subpoenas, as Section 258 requires that subpoenas be issued on the approval of the county or district judge. 22 O.S. Supp. 2000, § 258[22-258] (Second). This provides a safeguard against the potential that a district attorney may seek investigative subpoenas abusively.
¶ 19 You also ask whether the filing of a "John Doe Information" violates Rule 3.8 of the Rules of ProfessionalConduct, 5 O.S. 1991, ch. 1, app. 3-A. That provision requires a prosecutor to have a good faith belief that probable cause is established by the facts known to the prosecutor. Rule 3.8 provides, in pertinent part, that a prosecutor in a criminal case shall "(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]" Id. This particular ethical rule does not affirmatively mandate that a prosecutor have probable cause before filing a charge, but states a prosecutor must not prosecute a charge which he knows is not
supported by probable cause. This distinction has been recognized by scholars interpreting Model Rule 3.8(a), upon which Oklahoma's rule is based. See G. Hazard W. Hodes, The Law of Lawyering, § 34.3 (3d ed. 2001).
¶ 20 The definition of the term "prosecute" lends further support to the conclusion that a prosecutor is not prohibited from filing a "John Doe Information." "Prosecute" is defined as "[t]o follow up; to carry on an action or other judicial proceeding[.]" Black's Law Dictionary 1221 (6th ed. 1990). "To `prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion." Id. The Oklahoma Court of Criminal Appeals considered the meaning of the term "prosecution" in Davenport v. State, 202 P. 18 (Okla.Crim. 1921), when it stated:
 By the term "the prosecution," as used in a criminal case, is meant the continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused. It should not be confounded with the written accusation, nor is the term synonymous with criminal action. It consists of all the successive steps, having relation to each other, taken against the accused by the officer or officers charged with the enforcement of the criminal law.
Id. Under this authority, a prosecutor would be acting unethically if he followed through with an action which he knew was not supported by probable cause, not if he filed an Information about which he harbored doubts. Thus, Rule 3.8 does not necessarily prohibit the filing of a "John Doe Information" and may permit it under certain factual circumstances.
¶ 21 Even without filing an Information, a prosecutor may avail himself of the procedures set forth in 22 O.S. 1991 Supp.2000, §§ 1221-1238 outlining the requisites for the issuance of a search warrant. District attorneys may also request the assistance of a multicounty grand jury impaneled under the Multicounty Grand Jury Act pursuant to 22 O.S. 1991, § 353[22-353].
¶ 22 The decision to file criminal charges requires consideration of a wide range of factors. The public interest, as well as that of the criminal defendant, is best served by a thorough investigation prior to naming a particular defendant in a felony Information. If further investigation, through the use of an investigative subpoena after the filing of a "John Doe Information," shows that a specific individual had no role in a particular crime, that individual would not be subject to the prejudice he could suffer if he were named in an Information filed prematurely and later dismissed. If, however, the use of the investigative subpoena results in a "John Doe Information" being amended to name an individual, that individual, through the trial proceedings, has the right to confront those witnesses who were examined in his absence. He has the right to fully cross-examine them as to anything that happened at the proceeding wherein the district attorney had examined them, under oath, and determine if any undue pressures were exerted upon them. See
U.S. Const. amend. VI.
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Filing a "John Doe Information" to determine who possiblycommitted a crime may allow a district attorney to avail himselfof the provisions of 22 O.S. Supp. 2000, § 258; however,Section 258 does not allow a district attorney to file a "JohnDoe Information" to determine whether a crime has been committed.Whether filing a "John Doe Information" violates Rule 3.8 of theRules of Professional Conduct, 5 O.S. 1991, ch. 1, app. 3-A isa question of fact, depending on whether a prosecutor followsthrough with a charge he knows is not supported by probable causeor merely files an Information about which he harbors doubts.74 O.S. Supp. 2000, § 18b(A)(5). The question of the degree ofinformation which must be known prior to filing a "John DoeInformation" is a question of fact which cannot be answered by anAttorney General Opinion. Id.
W.A. DREW EDMONDSON ATTORNEY GENERAL
SANDRA D. HOWARD SENIOR ASSISTANT ATTORNEY GENERAL
[1] Those exceptions included: (1) proceedings for the removal of civil officers; (2) offenses arising in the militia, when in actual service, and in the land and naval forces in the time of war, or which the Territory may keep, with the consent of Congress in time of peace; (3) offenses tried in justices' and police courts in cases in which lawful jurisdiction is conferred upon them; and (4) offenses, not infamous crimes, all of which may be tried on Information, before the county or probate court, and if not tried there, before the district court. Okla. Stat. ch. 68, art. I, § 7 (1893).
[2] The United States Supreme Court recognized in 1884 inHurtado v. California, 110 U.S. 516, 538 (1884), that due process does not necessarily require an Indictment by a grand jury, but is served by proceeding by Information after examination and commitment by a magistrate.
[3] The following persons were magistrates: judges of the Supreme Court, district judges, justices of the peace, police and other special justices appointed or elected in a city, village or town. Okla. Stat. ch. 68, art. V, § 23 (1893).