2006 OK CR 32

**Michael E. DODSON, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F 2005–179.**

Court of Criminal Appeals of Oklahoma.

July 26, 2006.

John David Echols, Attorney at Law, Tulsa, OK, attorney for defendant and appellant at trial and appeal.

Brian Kuester, Asst. District Attorney, Tulsa, OK, attorney for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, Attorneys for State on appeal.

### SUMMARY OPINION

C. JOHNSON, Judge.

¶1 Appellant, Michael E. Dodson, was charged in Tulsa County District Court, Case No. CF 2003–4566, with Trafficking Illegal Drugs (Methamphetamine), in violation of 63 O.S.Supp.2004, § 415(B) (Count 1), Failure to Obtain Drug Tax Stamp, in violation of 68 O.S.2001, § 450 (Count 2), and Unlawful Possession of Marijuana (misdemeanor), in violation of 63 O.S.Supp.2004, § 2–402(B)(2) (Count 3). Jury trial was held before the Honorable Tom Gillert, District Judge, on January 12th—13th, 2005. The jury found Appellant guilty on all three counts and set punishment at four (4) years imprisonment and a one thousand dollar ($1,000.00) fine on Count 1, imposed a two hundred dollar ($200.00) fine on Count 2, and imposed a five hundred dollar ($500.00) fine and six months imprisonment on Count 3. Appellant was sentenced on February 22, 2005, in accordance with the jury's verdict. Judge Gillert ordered Counts 1 and 3 be served concurrently. Appellant then filed this appeal.

¶2 Mr. Dodson raises four (4) propositions of error:

1. The Oklahoma Constitution prohibits the issuance of a warrant based upon future contingent events, making the "house warrant" illegal, and the fruits of its execution inadmissible at trial;
2. Oklahoma statutes prohibit the issuance of a warrant based upon future contingent events, making the "house warrant" illegal, and the fruits of its execution inadmissible at trial;
3. The Oklahoma Constitution prohibits overbroad, general warrants, making the "house warrant" illegal, and the fruits of its execution inadmissible at trial;
4. Good faith cannot save this anticipatory general warrant, making the "house warrant" illegal, and the fruits of its execution inadmissible at trial.

After thorough consideration of the entire record before us on appeal, including the Original Record, the transcripts, exhibits, and briefs of the parties, we find Mr. Dodson's convictions and sentences must be reversed and remanded with instructions to dismiss for the reasons set forth below.

¶3 On September 29, 2003, a Tulsa police drug interdiction officer noticed a suspicious package at the Federal Express facility in Tulsa, Oklahoma. After the officer's drug dog "hit" on the package, the officer obtained a search warrant to open the package. Upon opening the package, the officer found the package contained a manila envelop with Mike Dodson's name on it. Inside the manila envelope was some rolled up tissue paper. Inside the rolled up tissue paper was a baggie. Inside the baggie was approximately one ounce of white crystal substance which field-tested positive for methamphetamine.[1]

¶4 The officer prepared an affidavit for an anticipatory search warrant requesting to search Mike Dodson's residence upon delivery of the package and presented it to a Tulsa County magistrate. After the officer obtained a search warrant, he dressed as a Federal Express driver and delivered the package to Michael Dodson's address. Dodson answered the door, signed for the package and took it inside his residence.

¶5 Tulsa police officers served the search warrant about fifteen (15) minutes later. During the search, they located the baggie containing the white crystal substance and a

---

1. A certain amount of the substance was taken from the package and retained by the SID officer. The amount the officers left in the package to be delivered to Dodson was a trafficking amount.

small quantity of marijuana in the house. No tax stamps were found on either the marijuana or the methamphetamine. The amount of methamphetamine recovered from Dodson's residence weighed 21.08 grams; the amount of substance retained from the package which was not delivered to Dodson weighed 6.65 grams.

¶ 6 In Proposition One, Mr. Dodson contends the Oklahoma Constitution prohibits the issuance of a warrant based upon future contingent events, making the "house warrant" illegal, and the fruits of its execution inadmissible at trial.[2] This Court has not previously addressed the constitutionality of anticipatory search warrants under our state constitution, but recently the United States Supreme Court, in *United States v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) upheld the constitutionality of anticipatory search warrants under the Fourth Amendment to the United States Constitution.[3]

¶ 7 Art.2, § 30 of the Oklahoma Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.

The language of Article II, Section 30 is "almost an exact copy of the fourth amendment of the Constitution of the United States" and while the language is not in all respects the same in the two provisions, the substance is identical. *Sloan v. Sprouse*, 1998 OK CR 56, ¶ 16, 968 P.2d 1254, 1258; U.S. Const. amend. IV.

¶ 8 Nothing in the text of Article II, Section 30 requires a showing that the evidence must be in the place to be searched at the time the warrant issues. On the contrary, the provision does not say anything about whether a finding of probable cause can or cannot be based upon the anticipation of some future event. *Accord Commonwealth. v. Glass*, 562 Pa. 187, 754 A.2d 655, 662 (2000). Nothing in the plain language of Article II, Section 30 prohibits the issuance of an anticipatory search warrant and they do not run afoul of plain language of Oklahoma's constitution.

¶ 9 While anticipatory search warrants may not run afoul of the United States Constitution or the Oklahoma Constitution, we find merit to Mr. Dodson's second proposition that Oklahoma statutes prohibit the issuance of a warrant based upon future contingent events. Sections 1221–1238 of Title 22 outline the requisites for the issuance of a search warrant. *State v. McElwee*, 1999 OK CR 2, ¶ 17, 972 P.2d 876, 880. "Absent specific statutory authority for a separate procedure prior to the filing of a complaint in a criminal case, the State's ability to search for and seize evidence of a crime is limited to the procedure set forth in 22 O.S.1981 § 1221, *et. seq.*, setting forth the requisites of a search warrant." *Isaacs v. District Court of Oklahoma County*, 1991 OK CR 110, ¶ 18, 818 P.2d 1247, 1249.

¶ 10 In the past, this Court has strictly construed the statutory language of Section 1221, *et. seq. See e.g. Merry v. State*, 1988 OK CR 278, ¶ 6, 766 P.2d 1377, 1379, *overruled on other grounds in Langham v. State*, 1990 OK CR 9, ¶ 6, 787 P.2d 1279, 1281 (finding search warrant invalid because the plain language of 22 O.S. § 1223, requiring a search warrant be supported by affidavit, was not followed). The plain language of Title 22, Section 1222 requires that the object

---

2. The "house warrant" refers to the anticipatory search warrant for the search of Dodson's house.

3. Prior to the issuance of *Grubbs*, all of the federal circuit courts approved the use of such warrants and concluded that anticipatory search warrants are not categorically unconstitutional. *See e.g., U.S. v. Ricciardelli*, 998 F.2d 8, 11 (1st Cir.1993); *U.S. v. Garcia*, 882 F.2d 699, 703 (2nd Cir.1989); *U.S. v. Loy*, 191 F.3d 360, 364 (3rd Cir.1999); *U.S. v. Goodwin*, 854 F.2d 33, 36 (4th Cir.1988); *U.S. v. Wylie*, 919 F.2d 969, 974 (5th Cir.1990); *U.S. v. Lowe*, 575 F.2d 1193, 1194 (6th Cir.1978); *U.S. ex. rel. Beal v. Skaff*, 418 F.2d 430, 432–433 (7th Cir.1969); *U.S. v. Tagbering*, 985 F.2d 946, 950 (8th Cir.1993); *U.S. v. Goff*, 681 F.2d 1238, 1240 (9th Cir.1982); *U.S. v. Hugoboom*, 112 F.3d 1081, 1085 (10th Cir.1997); *U.S. v. Santa*, 236 F.3d 662, 673 (11th Cir.2000).

of the search be currently in the possession of the person or at the location to be searched. It provides that a search warrant may be issued and property seized "upon any of the following grounds:"

> First: When the property was stolen or embezzled, in which case it may be taken on the warrant, from any house or other place in which it is concealed, or from the possession of the person by whom it was stolen or embezzled, or of any other person in whose possession it may be.
>
> Second: When it was used as the means of committing a felony, in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or of any other person in whose possession it may be.
>
> Third: When it **is in the possession of any person,** with the intent to use it as the means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered, in which case it may be taken on the warrant from such person, or from a house or other place occupied by him, or under his control, or from the possession of the person to whom he may have so delivered it.
>
> Fourth: When the property constitutes evidence that an offense was committed or that a particular person participated in the commission of an offense.

22 O.S.2001, § 1222.

¶ 11 The language used in "First," "Second," and "Fourth" subsections clearly presuppose a crime has already been committed which is shown by the use of the past tense in those subsections—*i.e.* "when the property *was stolen or embezzled* ...", "when it *was used* as the means of committing a felony ...", and "... that an offense was committed or that a ... person participated in ...". The language in the "Third" subsection is plain and clear, and is in the present tense—a warrant may be issued when the property "is in the possession of"—which specifically requires the property to currently be in the possession of the person.

¶ 12 The wording of the "Third" subsection of Section 1222 is applicable to this case. The anticipatory search warrant was issued based upon an affidavit which claimed the defendant

> "... has placed the following described property for concealment, *does now* unlawfully, illegally, knowingly and willfully *keep,* and *does* unlawfully *have in his possession* and under his control certain dangerous substances ..."

Although the affiant expected that certain events (Dodson's possession of illegal substances) would occur *after* the issuance of the warrant, it is that future event which created all of the probable cause for the issuance of the warrant.

¶ 13 The language of 22 O.S.2001, § 1222 is plain and unambiguous and does not evince a legislative intent to allow the issuance of a search warrant when the crime to which the evidence at issue relates had not yet occurred and when the evidence to be seized was not presently in the possession of the person whose premises are to be searched. Although anticipatory search warrants may be constitutional, those which fail to comply with the requirements of statute are not currently permissible in Oklahoma.

¶ 14 While we recognize that a majority of states have found anticipatory search warrants to be constitutional, several have held they are invalid upon statutory grounds. *Kostelec v. State,* 348 Md. 230, 703 A.2d 160, 165 (1997); *People v. Poirez,* 904 P.2d 880, 883 (Colo.1995); *State v. Gillespie,* 530 N.W.2d 446, 449 (Iowa 1995). Other states which have found the anticipatory search warrants were constitutional but were not permitted by statute subsequently amended their statutes to specifically provide for such warrants. *See People v. Ross,* 168 Ill.2d 347, 213 Ill.Dec. 672, 659 N.E.2d 1319, 1321 (1995)[two years later, in 1997, Illinois amended its statutes to specifically authorize anticipatory search warrants]; *Ex parte Turner,* 792 So.2d 1141, 1151 (Ala.2000)[while this appeal was pending, but after the search warrant involved was issued, Alabama also amended its Rules and statute to authorize anticipatory warrants]; *State v. Scott,* 87 Ha-

wai'i 80, 951 P.2d 1243, 1244 (1998)[Hawaii subsequently amended its statute to specifically authorize anticipatory warrants].[4]

¶ 15 While the anticipatory search warrant issued in this case does not run afoul of either the United States Constitution or the Oklahoma Constitution, it was not authorized by the plain language of our statute which specifically sets forth the requisites for when a search warrant may be issued. The utility of anticipatory search warrants in drug investigations, especially when dealing with the activities of persons who traffic in narcotics cannot be ignored. However, it is incumbent upon our legislature to amend § 1222 of Title 22 to provide a legal statutory basis for such anticipatory warrants to be issued.

¶ 16 The anticipatory warrant issued in this case was invalid and impermissible on statutory grounds, under 22 O.S.2001, § 1222, and did not set forth probable cause for the warrant to issue. *See e.g. Merry*, 1988 OK CR 278, ¶ 6, 766 P.2d at 1380 (noting search warrant failed on statutory grounds because the strict requirements of 22 O.S. § 1223 were not met); *Isaacs*, 1991 OK CR 110, ¶ 18, 818 P.2d at 1249 ("the State's ability to search for and seize evidence of a crime is limited to the procedure set forth in 22 O.S.1981 § 1221 et. seq.") Dodson submits the evidence seized from his home should have been suppressed because it was seized pursuant to a warrant which was not issued according to law, and in Proposition Four, he argues the good faith exception cannot save admission of evidence seized during the unlawful search.

¶ 17 In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that evidence obtained pursuant to a facially valid search warrant should not be suppressed solely because the affidavit supporting the warrant did not allege sufficient facts to constitute probable cause for the search, unless the affidavit was so defective that no well trained officer would have relied upon it. The State responds that "both federal and state courts in which anticipatory warrants are allowed have ruled that the Leon good faith exception is applicable." The State acknowledges that "one could not use good faith to rehabilitate an inherently flawed warrant."

¶ 18 The State's response recognizes that the good faith exception enunciated in Leon will save a valid anticipatory warrant. However, anticipatory search warrants are not authorized by Oklahoma law and are therefore not valid. Officers are assumed to have "a reasonable knowledge of what the law prohibits." *Leon*, 468 U.S. at 919, n. 20, 104 S.Ct. at 3419, n. 20. A well-trained officer in Oklahoma should have known that such warrants were not specifically allowed under our statutes. "Suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in

---

4. A number of states have addressed the constitutionality of anticipatory search warrants, but have not addressed their validity upon a statutory challenge. *See Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998); *State v. Baker*, 216 Ga.App. 66, 453 S.E.2d 115 (1995); *State v. Wright*, 115 Idaho 1043, 772 P.2d 250 (Id.Ct.App.1989); *State v. Trenter*, 85 S.W.3d 662, 677, n. 2 (Mo.Ct. App.2002); *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547, 556 (1993), *overruled on other grounds in State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999); *State v. Gonzalez*, 143 N.H. 693, 738 A.2d 1247, 1255 (1999); *State v. Ulrich*, 265 N.J.Super. 569, 628 A.2d 368 (1993); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); *State v. Smith*, 124 N.C.App. 565, 478 S.E.2d 237 (1996); *State v. Wahl*, 450 N.W.2d 710 (N.D.1990); *State v. Thompson*, 2004 WL 3090239 (Ohio App.2004)("This Court has not considered the validity of an anticipatory search warrant ..."); *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655 (2000); *State v. Covert*, 368 S.C. 188, 628 S.E.2d 482 (App.2006)(recognized that the "statutory warrant requirement is separate and distinct from the prohibition in the federal and state constitutions against unreasonable searches and seizures."); *State v. Engel*, 465 N.W.2d 787 (S.D.1991); *State v. Wine*, 787 S.W.2d 31 (Tenn.Crim.App.1989); *State v. Toone*, 823 S.W.2d 744 (Tx.Ct.App.1992); *McNeill v. Commonwealth*, 10 Va.App. 674, 395 S.E.2d 460 (1990); *State v. Meyer*, 216 Wis.2d 729, 576 N.W.2d 260 (Wi.1998).

The following have found anticipatory search warrants to be authorized by state statute: *Johnson v. State*, 617 P.2d 1117, 1124 (Alaska 1980); *Alvidres v. Superior Court*, 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1970); *Bernie v. State*, 524 So.2d 988, 992 (Fla.1988); *Marchetti v. State*, 725 N.E.2d 934 (Ind.App.2000); *Commonwealth v. Soares*, 384 Mass. 149, 424 N.E.2d 221 (1981); *State v. Parent*, 110 Nev. 114, 867 P.2d 1143, 1145 (1994); *State v. Womack*, 967 P.2d 536 (Utah App.1998).

which exclusion will further the purposes of the exclusionary rule." *Leon,* 468 U.S. at 918, 104 S.Ct. at 3418. The purpose of the exclusionary rule is to "deter police misconduct" and not "to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417; *Miles v. State,* 1987 OK CR 179, ¶ 8, 742 P.2d 1150, 1152.

 ¶ 19 The purpose of the exclusionary rule is furthered by extending it to the facts of this case. "Suppression of the evidence seized pursuant to a search warrant issued contrary to the rule of law is necessary to preserve the rule of law itself." *Ex parte Turner,* 792 So.2d at 1151. Here, the magistrate issued a warrant upon grounds which were not authorized by state law and the officer's conduct in executing the warrant was not objectively reasonable given the clear and unambiguous language of our statutes authorizing the grounds upon which a search warrant may issue.

¶ 20 We will not apply the good-faith exception to save the admission of evidence obtained pursuant to a search warrant which was not supported by probable cause. *See Solis–Avila v. State,* 1992 OK CR 27, ¶ 4, 830 P.2d 191, 192 (declining to apply Leon good-faith exception to save admission of evidence obtained pursuant to invalid night-time search). The Legislature may amend the language of Section 1222 of Title 22 to allow issuance of search warrants based upon future anticipated events, the application of the exclusionary rule to the facts of this case will ensure that police officers and magistrates and judges abide by the strictures of statutes relating to the issuance of search warrants.

¶ 21 Accordingly, because the evidence of drug trafficking, possession of marijuana, and failure to affix tax stamp was obtained pursuant to a statutorily invalid warrant, the trial court should have granted the Motion to Suppress. There being no evidence remaining upon which to sustain Mr. Dodson's convictions, his convictions must be reversed and remanded with instructions to dismiss. *Webb v. State,* 1971 OK CR 173, ¶ 8, 484 P.2d 544. Our decision above renders the argument in Proposition Three moot.

**DECISION**

¶ 22 The Judgment and Sentences of the trial court in Tulsa County District Court, Case No. CF 2003-4566, are hereby *RE-VERSED AND REMANDED WITH IN-STRUCTIONS TO DISMISS.* Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

CHAPEL, P.J., A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: dissents.

LUMPKIN, V.P.J.: Dissent.

¶ 1 I see absolutely no reason—legal, moral, practical, or otherwise—to apply the exclusionary rule's harsh sanction to the facts of this case, for there is no overreaching police conduct to deter. Therefore, I dissent to the Court's opinion and its narrow reading of 22 O.S.2001, § 1222.

¶ 2 Time after time, this Court has instructed police officers who are actively investigating crimes and seeking to conduct a search in that regard to first "obtain your warrants." The policy reason, of course, is that warrantless searches are to be the exception not the rule. Our statutes strongly encourage the participation of a neutral magistrate, detached from the underlying investigation and applying an objective eye to the facts and law involved. This protects all parties involved.

¶ 3 On this occasion, however, the authorities followed our advice and obtained not one warrant, but two. Through the use of good police work, drugs that were in the process of being illegally distributed from one person to another through a private mail delivery service were intercepted while in transit. After a drug dog hit on a suspicious package, authorities obtained a warrant to open the package.[1] And there they found exactly what they had suspected: methamphetamine,

---

1. It is interesting to note that a drug dog hit on a suspicious vehicle in transit would suffice for probable cause to conduct a search of the vehicle.

located inside an envelope with Appellant's name written on it.

¶ 4 At this point, officers had probable cause to search the place where these illegal drugs were scheduled to be delivered, i.e., Appellant's residence. *See e.g., United States v. Walker,* 324 F.3d 1032, 1038 (8th Cir.2003)(finding an anticipatory warrant of a residence issued under similar circumstances was supported by probable cause). Exercising extreme caution, they obtained another warrant and prepared to serve the warrant at a time when they knew beyond a shadow of a doubt that drugs would be located on the premises. This was extraordinary. *See United States v. Limares,* 269 F.3d 794, 799 (7th Cir.2001)(finding issuance of an anticipatory warrant at a private residence under similar circumstances was the "model of good, even over-cautious, police work" and that "suppressing the evidence found by these agents would be a travesty.")

¶ 5 So now we will punish those same officers for their good work by dismissing the case and allowing another drug trafficker back on the street. And we do this by taking an unconvincing position on the law, a position that is both ill-advised and not required under the statutory language. In other words, the Court is, for some inexplicable reason, straining a gnat's hair to reverse this case.

¶ 6 Under paragraph two of section 1222, a search warrant may issue and property seized when that property "was used as the means of committing a felony, in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or of any other person in whose possession it may be." It takes no legal gymnastics to find this section may be used to support the warrants issued here. Likewise, the fourth paragraph may be used as the "property" here, the mailed package of drugs, "constitutes evidence that an offense was committed or that a particular person participated in the commission of an offense."

¶ 7 Even if we were to accept the hyper-technical and parsed legal position in the Court's opinion, the inevitable discovery rule would be applicable. *See Limares,* 269 F.3d at 799. Officers could have had the magistrate ready to issue the warrant once the drugs were on the property and then executed it minutes later. However, the problem with that scenario is that drugs are too often easily destroyed, i.e. flushing down the toilet, and time, as well as stealth, is of the essence. That is why this case is evidence of nothing more than good, professional police work and that type of professionalism should be commended, not condemned. In addition, for once the Federal Courts have been more reasonable in their application of the exclusionary rule than the draconian action taken by the Court in this case. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court held the Fourth Amendment exclusionary rule does not ban evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral magistrate, but later found to be invalid for lack of probable cause. In this case, there was not only probable cause, but good faith by the officers that they were, in fact, following the law. This Court should exercise the same type of practical, common sense shown by the United States Supreme Court and definitely not exclude the evidence obtained by the execution of the warrants.